# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:09cv449

| | |
|---|---|
| **MARGIE GAIL DURKEE**, *et al.*, ) <br> ) <br> **Plaintiffs**, ) <br> ) <br> Vs. ) <br> ) <br> **C. H. ROBINSON WORLDWIDE, INC.,** ) <br> *et al.*, ) <br> ) <br> **Defendants.** ) <br> _____ ) | **MEMORANDUM AND** <br> **RECOMMENDATION** |

**THIS MATTER** is before the court on Geologic Solutions, Inc.'s and Xata Corporation's Motion to Dismiss (#25),Motion to Dismiss Cross-Claims for Contribution and Indemnification Asserted Against Them by PeopLease Corporation (#39). Oral arguments were heard on such motions on April 20, 2010, at which plaintiffs submitted and argued case law that was not argued in its response. The court allowed moving defendants the opportunity to address such citations and arguments in a supplemental brief, which was filed May 4, 2010. In addition, such defendants filed their Rule 12(b)(6) Motion to Dismiss the Cross-Claims for Contribution and Indemnification Asserted Against Them By the Domtar Defendants (#60) after the hearing. This motion is also ripe as the Domtar defendants did not respond to such motion within the time allowed.

The court having considered all the arguments and case law submitted, the undersigned is compelled to recommend that Geologic Solutions, Inc.'s and Xata Corporation's motions be allowed inasmuch as plaintiffs have failed to state a

recognized cause of action under North Carolina law.

## FINDINGS AND CONCLUSIONS

**I.  Background**

The facts underlying this diversity action are both simple and tragic.  Plaintiff Camelia Buchanan was driving westbound on Interstate 40 on the morning of July 1, 2008, in Buncombe County, North Carolina. Complaint, at ¶ 20.  Ms. Buchanan's passengers on that included plaintiff Margie Durkee, and two minor children, on whose behalf claims have been made by their guardians *ad litem* herein. Id.

Not far behind, truck driver Carroll Jett (hereinafter "Jett") was also westbound, operating a tractor and loaded trailer.  Id., at ¶ 21.  In the cab of the truck Jett was operating a communication system had been installed that was manufactured by defendant Geologic Solutions, Inc. (hereinafter "Geologic").  Id., at ¶ 124.  Such system allows the driver to receive text messages from a dispatcher while the vehicle is in motion.  Id., at ¶ 139.

Plaintiffs contend that Mr. Jett became distracted by the communications system, which required the driver to look away from the road to view the message, and while looking at the message Jett operated the fully loaded tractor-trailer into and over Ms. Buchanan's vehicle, which had slowed due to traffic and work-zone hazards. Id., at ¶¶ 22-23. All four occupants of Ms. Buchanan's vehicle sustained serious injuries. Id., at ¶¶ 49 & 146.

**II.  Cause of Action Asserted Against Geologic and Xata**

Plaintiffs' cause of action against Geologic and Xata sounds in products

liability. Even though they did not purchase the product, nor were they the end user, plaintiffs contend that these defendants owed them and the traveling public a duty to design such devices in a manner that would not cause distraction of the truck driver, and, in turn, avoid tragic accidents like the one underlying this action.

Specifically, plaintiffs allege in relevant part in support of their Fourteenth Cause of Action, "Products Liability – Manufacturer of Geologic Texting System," that:

(1) it was reasonably foreseeable by Geologic and Xata that the trucks in which the communications systems would be mounted would be carrying heavy loads while traveling at Interstate highway speeds;

(2) Geologic and Xata knew or should have known in the exercise of reasonable care that the drivers of tractor-trailers would become distracted and take their eyes from the roadway to view the displayed text message;

(3) Geologic and Xata had the duty to exercise reasonable care in the design and manufacture of the texting system so that messages would only be received (or, readable) while the vehicle was stopped; and

(4) Geologic's and Xata's failure to do so evidenced a conscious and intentional disregard of an indifference to the rights and safety of the traveling public, including the plaintiffs, which they knew or should have known was reasonably likely to result in injury, damage, or harm.

Id., at ¶¶ 49, 99, 139, 140, 143, 145, 146.[1] Thus, the only claim against Geologic and Xata is a products liability negligence claim asserted under Chapter 99B-6 of the North Carolina General Statutes, alleging that plaintiffs were injured through the inadequate design of a texting device sold by such defendants.

III.    **Motion to Dismiss: Rule 12(b)(6) Standard**

Geologic and Xata have moved to dismiss under Rule 12(b)(6), Federal Rules of Civil Procedure. Until recently, a complaint could not be dismissed under Rule 12(b)(6) unless it appeared certain that plaintiffs could prove no set of facts which would support their claim and entitle them to relief. Neitzke v. Williams, 490 U.S. 319 (1989); Conley v. Gibson, 355 U.S. 41 (1957). This "no set of facts" standard has been specifically abrogated by the Supreme Court in recent decisions.

First, in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Court held that the "no set of facts" standard first espoused in Conley, supra, only describes the "breadth of opportunity to prove what an adequate complaint claims, not the minimum adequate pleading to govern a complaint's survival." Id., at 563. The Court specifically rejected use of the "no set of facts" standard because such standard would improperly allow a "wholly conclusory statement of claim" to "survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." Id., at 561 (alteration in original).

Post Twombley, to survive a Rule 12(b)(6) motion to dismiss, plaintiffs must

---

[1] The undersigned has attempted to summarize the relevant contentions.

allege facts in their complaint that "raise a right to relief above the speculative level." Id., at 555.

> [A] plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . .

Id. (second alteration in original; citation omitted). Further, a complaint will not survive Rule 12(b)(6) review where it contains "naked assertion[s] devoid of further factual enhancement." Id., at 557. Instead, plaintiffs must now plead sufficient facts to state a claim for relief that is "*plausible* on its face." Id., at 570 (emphasis added).

While the Court was clear in Twombly that Conley was no longer controlling, see Twombly, 550 U.S. at 563, and Felman Production Inc. v. Bannai, 2007 WL 3244638, at *4 (S.D.W.Va. 2007), it again visited the Rule 12(b)(6) pleading standard in Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937 (May 18, 2009). In Iqbal, the Court determined that Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Id., S.Ct., at 1949. The Court explained that, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" Id. (citing Twombly, supra; emphasis added). What is plausible is defined by the Court:

> [a] claim has facial plausibility when the plaintiff pleads sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Id. This "plausibility standard" requires "more than a sheer possibility that a defendant has acted unlawfully." Id. Thus, a complaint falls short of the plausibility standard where plaintiffs plead "facts that are 'merely consistent with' a defendant's

liability . . . ." Id. While the court accepts plausible factual allegations made in a complaint as true and considers those facts in the light most favorable to plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP, 213 F. 3d 175, 180 (4th Cir. 2000).

## IV. Discussion

### A. Introduction

The extension of products liability law offered by plaintiffs herein is appealing as it suggests that manufacturers of devices that distract drivers from the full-time job of driving be held liable for the injuries such drivers cause to others. Indeed, the court takes judicial notice that the local news is filled with stories of drivers, distracted with retrieving or sending text messages, injuring and killing themselves and/or others. However, a review of North Carolina decisions, as well as decisions of other jurisdictions, indicates that a cause of action does not lie for products liability negligence under Chapter 99B-6 against a product manufacturer for harm caused to third parties by an end user's misuse or poor judgment in the use of a product.

### B. Products Liability Under North Carolina Law

In their Complaint, plaintiffs cite Chapter 99B-6(a) in support of their products liability claim against Geologic and Xata. That statute provides in pertinent part, as follows:

> No manufacturer of a product shall be held liable in any products liability action for the inadequate design or formulation of the product unless the claimant proves that at the time of its manufacture the manufacturer acted unreasonably in designing or formulating the

-6-

product, that this conduct was a proximate cause of the harm for which damages are sought, and also proves one of the following:

>   (1)   At the time the product left the control of the manufacturer, the manufacturer unreasonably failed to adopt a safer, practical, feasible, and otherwise reasonable alternative design or formulation that could then have been reasonably adopted and that would have prevented or substantially reduced the risk of harm without substantially impairing the usefulness, practicality, or desirability of the product....

N.C.Gen.Stat. § 99B-(6)(a). The essential elements of a products liability claim based on negligence are: (1) duty; (2) a breach of that duty; (3) causation; and (4) damages." Smith v. Wyeth-Ayerst Labs. Co., 278 F.Supp.2d 684, 706 (W.D.N.C. 2003). The duty of a manufacturer is clear under North Carolina law, which is

> to use reasonable care throughout the manufacturing process, including making sure that the product is free of any potentially dangerous defect in manufacturing or design.

Red Hill Hosiery Mill, Inc. v. Magnetek, Inc., 530 S.E.2d 321, 326 (N.C. Ct. App. 2000). Thus, the question in this case comes down to whether plaintiffs have alleged facts that create a legal duty these manufacturers owed to plaintiffs.

### C. Duty

In North Carolina, "actionable negligence presupposes the existence of a legal relationship between parties by which the injured party is owed a duty by the other, and such duty must be imposed by law." Huntley v. Howard Lisk Co., Inc., 573 S.E.2d 233, 236 (N.C. Ct. App. 2002). Review of the Complaint reveals no allegations that any relationship existed between these plaintiffs and Geologic and Xata. Further, there is no allegation that the communications device malfunctioned

in any way. Rather, the only allegations are that the end user used the device when he should have been watching the road, and that Geologic and Xata should have anticipated such misuse and designed it in a manner which prevented it from being used while the truck was moving.

The court can find no case law that would impose a duty on manufacturers to anticipate misuse of a product and design such a product to prevent misuse. If such a legal duty to anticipate misuse were to be imposed on manufactures, no vehicle would be capable of traveling above the speed limit, car ignitions would all be equipped with ignition interlock devices, and guns would not be sold to persons with poor judgment.

### D. Reasonably Foreseeable

Plaintiffs go to great lengths to describe the size and weight of tractor-trailers and the likelihood that a driver would be distracted by such communication device:

> the Coretrans truck tractor trailer was unfit to operate safely given the ability of Jett to receive messages in said vehicle, weighing thousands of pounds, and traveling at Interstate highway speeds.

Compl., at ¶ 48;

> Carroll Jett had on board the tractor, a text messaging system which allowed Jett to both receive messages while operating a heavily loaded tractor trailer on Interstate highway at Interstate highway speeds, and further, during the operation of said text messaging system, was likely and foreseeable to distract him in its operation.

id., at ¶ 67;

> it was foreseeable and likely that a major accident with a member of the public would occur while a driver of a tractor trailer was distracted by receiving text messages while traveling at Interstate highway speeds and carrying heavy loads as was the case as alleged herein.

id., at ¶ 109;

> a Geologic texting system which allowed text messages to be received while traveling at Interstate highway speeds while driving a heavily loaded tractor which, created an unreasonable risk of harm to the traveling public, including the plaintiffs, given the fact that it was foreseeable and likely that the driver would become distracted in looking at the texting system as was the case herein.

id., at ¶ 124; and

> it was foreseeable by Geologic Solutions, Inc. and/or XATA Corporation that the tractors in which the texting systems would be mounted and used would be carrying heavy loads while traveling at Interstate highway speeds.

Id., at ¶ 139.

North Carolina case law is well settled at to what is reasonably foreseeable in the context of a products liability action. In North Carolina, a manufacturer bears

> responsibility for consequences which are probable, and which could reasonably have been foreseen, according to ordinary and usual experience, but not for consequences which are merely possible according to occasional experience.

Kientz v. Carlton, 96 S.E.2d 14, 18 (N.C. 1957).

Clearly, the court can take judicial notice of the growing problem of accidents caused by drivers who divert their attention from the road to send or retrieve text messages from their cell phones, who input data into GPS devices while driving, and some who even surf the net on their laptop while driving. Indeed, this court is aware, and takes notice, that equipping police cars with lap top computers mounted so that officers can receive data while driving is now standard. The court does not disagree with plaintiffs that using any data entry or retrieval device while driving is dangerous to both the drivers and to other road users, regardless of the size of the vehicle being

operated. Indeed, adjusting the radio and climate controls, or even talking to a passenger, can be risky activities. These situations beg the question, however, as to where does manufacturer responsibility end and the responsibility of the driver begin?

While the North Carolina Supreme Court in <u>Kientz</u> was written during a time when a factory AM radio was prevailing in-car automotive technology, the test of what is reasonably foreseeable by a manufacturer is equally applicable a half-century later. <u>Kientz</u> provides that courts are to distinguish the merely possible from the probable in determining what is reasonably foreseeable. While North Carolina courts have yet to apply such test in the context of texting drivers, other jurisdictions have. In <u>Williams v. Cingular Wireless</u>, 809 N.E.2d 473, 475-79 (Ind. Ct. App. 2004), <u>appeal</u> <u>denied</u>, 822 N.E.2d 976 (Ind. 2004), the court held that, as a matter of law, a cellular telephone company does not owe a duty to a third person injured by a driver who was distracted while talking on a cell phone. There, the appellate court reasoned that even when one assumes that use of the device contributed to the accident, the cellular company had no duty to the injured plaintiffs because there was no relationship between the wireless company that supplied the phone and the injured plaintiff, the accident was not reasonably foreseeable, and it was not sound public policy to impose liability on the wireless company under the circumstances. <u>Id.</u>, at 475. The appellate court explained as follows:

> Simply because an action may have some degree of foreseeability does not make it sound public policy to impose a duty. For example, many items may be used by a person while driving, thus making the person less attentive to driving. It is foreseeable to some extent that there will be drivers who eat, apply make up, or look at a map while driving and that some of those drivers will be involved in car accidents because

> of the resulting distraction. However, it would be unreasonable to find it sound public policy to impose a duty on the restaurant or cosmetic manufacturer or map designer to prevent such accidents. It is the driver's responsibility to drive with due care. Similarly, Cingular cannot control what people do with the phones after they purchase them. To place a duty on Cingular to stop selling cellular phones because they might be involved in a car accident would be akin to making a car manufacturer stop selling otherwise safe cars because the car might be negligently used in such a way that it causes an accident.

Id., at 478.

That a driver of a heavily laden tractor-trailer would divert his attention from the road in a situation where, as described in the Complaint,[2] his full attention was required is certainly possible. This alleged failure of the truck driver to operate the vehicle with due care for his own safety as well as the safety of others[3] cannot, however, be ascribed to a company that manufactures a communications device as use of the device without due care, while certainly possible, is not probable, the results which could not have been reasonably foreseen. As the Court held in Kientz, the duty owed by a product manufacturer "does not require him to guard against hazards apparent to the casual observer or to protect against injuries resulting from the user's own patently careless and improvident conduct." Kientz, supra, at 18.

Plaintiffs also argue that "risk creation" imposes a legal duty on Geologic and Xata. The North Carolina Supreme Court has held that "risk-creation behavior" only gives rise to a legal duty where "the risk is both unreasonable and foreseeable." Estate of Mullis v. Monroe Oil Co.,Inc., 505 S.E.2d 131, 137 (N.C. 1998). Plaintiffs must

---

[2] "Camelia Buchanan slowed her vehicle in response to traffic and work zone hazards." Compl., at ¶ 22.

[3] See Compl., at ¶ 25.

allege and later show "additional factor or factors which would have enabled the vendors to foresee that harm was, in all likelihood, going to occur." Id. Thus, simply because a product is placed in the stream of commerce does not place a legal duty on the manufacturer for careless or improper use; rather the risk of harm has to be both unreasonable and foreseeable.

Plaintiffs citation of other authorities does not support their claim moving forward:

Cassels v. Ford Motor Co., 178 S.E.2d 12 (N.C. Ct. App. 1970) involved injuries caused by a defective drive shaft. No allegation is made in this case that the communications device was in any manner defective or that plaintiffs were directly injured due to a defect in this product.

Tune v. Adams, 137 S.E.2d 132 (N.C. 1964) was not a products liability case, but involved defendant's incitement of third persons to harm the plaintiff.

Adams v. Morris, 584 S.W.2d 712 (Tex. 1979) involved a passenger who, after the action against the driver was resolved, was held liable for injuries to pedestrians. In that case, the passenger plaintiff actively distracted the driver and failed to keep a lookout at a time when he knew the driver was paying attention. The court there found that the passenger had the same duty of care as the driver when they were in a vehicle together.

Driver v. Burlington Aviation, Inc., 430 S.E.2d 476 (N.C. Ct. App.1993) involved injury that was attributable to incorrect information being provided in an airplane instruction manual concerning how to operate and maintain the aircraft.

There is no allegation in this case that the communications device was defective or that the instructions that accompanied it were incorrect.

Hairston v. Alexander Tank & Equip. Co., 311 S.E.2d 227 (N.C. 1984) involved an automobile dealership that failed to tighten the lug nuts on the wheel of a new car that it sold. The wheel fell off, and the purchaser who was operating the vehicle was subsequently killed when he got out of the car and was hit by a negligent driver. The issue in that case was whether the car dealership's negligence "was superseded or excused by the subsequent negligence"of the driver who hit the purchaser. In relevant part, the Court held that "a defendant is not required to foresee events which are merely possible, but only those which are reasonably foreseeable." Id., at 565.

Isaacson v. Toyota Motor Sales, USA, Inc., 438 F. Supp. 1 (E.D.N.C. 1976) involved a federal district court predicting what state law would be in the absence of state decision. The court predicted that the North Carolina Supreme Court would

> find that a manufacturer is under a duty to anticipate that certain vehicles will be involved in accidents and to design and manufacture vehicles which avoid subjecting the users to unreasonable risks of foreseeable injury.

Id., at 5. Unlike Isaacson, defendants have pointed the court to binding state authority which defines the scope of a product manufacturer's duty. See Kientz, supra.

Council v. Dickerson's Inc., 64 S.E.2d 551 (N.C. 1951) concerns narrow circumstances under which the duty owed to the traveling public arises. The Court held that

> when the defendant undertook to perform the promised work under his

> contract with the State Highway and Public Works Commission, the positive legal duty devolved upon him to exercise ordinary care for the safety of the general public traveling over the road on which he was working.

Id., at 553. In that case, the duty to the public arose because the defendant had a contract with the state to work on state highways. Id. There are no allegations of any legal relationship between plaintiffs and defendants Geologic and Xata.

Dail v. Taylor, 151 N.C. 284 (1909) involved exploding soda bottles that caused personal injury to the merchant who purchased the products when they exploded. The products in Dail contained latent defects, and the court held that where the seller knew or should have known of a latent defect that was likely to cause injury to the buyer, failure to exercise ordinary care to prevent such injury was a breach of duty owed to the buyer. The action before this court does not involve latent defects.

Morgan v. Cavalier Acquisition Corp., 111 N.C. App. 520 (1993) involved a vending machine that tipped over and fell on a 17-year-old student, killing him. His estate sued for product liability, alleging that the vending machine had "latent defects" and that the manufacturer failed "to give notice of danger." Id., at 527-28. There is no allegation in this case of "latent defect" or failure to warn. Plaintiffs contention is that these defendants should be held liable for designing and selling a product that "distracted" Mr. Jett while he was driving.

Mozingo v. Pitt County Memorial Hosp., 400 S.E.2d 747 (N.C. Ct. App. 1991) is a medical malpractice decision. Such decision provides that the existence of a legal duty is a question of law for the Court to decide, unless there is a factual dispute. Id., at 753. All the facts alleged have been considered in a manner most favorable to

plaintiffs, making the issue a question of law in this case.

Olympic Products Co., A Div. of Cone Mills Corp. v. Roof Systems, Inc., 363 S.E.2d 367 (N.C. Ct. App. 1988) is a construction case and did not involve allegations of products liability. In that case, the appellate court addressed the existence of a duty in tort law, holding that

> [a]ctionable negligence presupposes the existence of a legal relationship between parties by which the injured party is owed a duty by the other, and such duty must be imposed by law.

Id., at 322 (citation omitted). The court goes on to state the well settled law of North Carolina that privity of contract is not required to recover against a person who undertakes service for another, but then injures a third party. Id. The appellate court explained

> [t]his duty to protect third parties from harm arises under circumstances where the party is in a position so that "anyone of ordinary sense who thinks will at once recognize that if he does not use ordinary care and skill in his own conduct with regard to those circumstances, he will cause danger of injury to the person or property of the other."

Id., at 372 (citation omitted). As discussed earlier, however, a manufacturer only bears

> responsibility for consequences which are probable, and which could reasonably have been foreseen, according to ordinary and usual experience, but not for consequences which are merely possible according to occasional experience.

Kientz v. Carlton, 96 S.E.2d 14, 18 (N.C. 1957). The distinction to be drawn between Kientz and Olympic may best be described by example: under Olympic, a construction company may well be liable to a pedestrian who is injured when a improperly constructed garden wall gives way; however, the same construction

company would not be liable where the owner put a properly constructed wall to an unintended and unforeseeable use, such as a retaining wall for a swimming pool, and such wall gives way injuring a pedestrian.

Simmons v. NC Department of Transp., 496 S.E.2d 790 (1998) concerns an injury sustained by a person who worked for the Department of Transportation. There are no products liability issues in such action.

### E. Conclusion

The court has carefully considered all the arguments and authorities cited and can only conclude that North Carolina does not recognize a products liability cause of action under the facts alleged. When

> sitting in diversity, a federal court should not create or expand a State's public policy. Moreover, absent a strong countervailing federal interest, the federal court should not elbow its way into this controversy to render what may be an uncertain and ephemeral interpretation of state law.

Time Warner Entertainment v. Carteret-Craven Electric Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (citations and internal quotations omitted). Whether North Carolina should expand its products liability or tort law to provide the protection to the traveling public advocated by plaintiffs is a matter left soundly to the state legislature or state courts. The undersigned's job is limited to review statutory and case law to determine whether such cause of action exists.

For the reasons discussed above, the undersigned cannot find that a products liability cause of action exists under North Carolina law based on the facts alleged, making such insufficient under Rule 12(b)(6). Plaintiffs have not alleged facts which, when taken as true, could plausibly support a finding that Geologic and Xata owed

them a legal duty of care or that such defendants proximately caused them harm under current North Carolina law.

Finally, Geologic Solutions, Inc.'s and Xata Corporation's Motion to Dismiss Cross-Claims for Contribution and Indemnification Asserted Against Them by PeopLease Corporation (#39) and Rule 12(b)(6) Motion to Dismiss the Cross-Claims for Contribution and Indemnification Asserted Against Them By the Domtar Defendants (#60) should also be allowed inasmuch as the existence and viability of the crossclaims is dependent on the existence and viability of plaintiffs' Fourteenth Cause of Action.

## RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that Geologic Solutions, Inc.'s and Xata Corporation's Motion to Dismiss (#25), Motion to Dismiss Cross-Claims for Contribution and Indemnification Asserted Against Them by PeopLease Corporation (#39), and Rule 12(b)(6) Motion to Dismiss the Cross-Claims for Contribution and Indemnification Asserted Against Them By the Domtar Defendants (#60) be **ALLOWED.**

## Time for Objections

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), and Rule 72, Federal Rules of Civil Procedure, written objections to the

findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same.  **Responses to the objections must be filed within fourteen (14) days of service of the objections.**  Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal.  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985), <u>reh'g</u> <u>denied</u>, 474 U.S. 1111 (1986); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir.), <u>cert</u>. <u>denied</u>, 467 U.S. 1208 (1984).

Signed: May 26, 2010

Dennis L. Howell
United States Magistrate Judge